UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFONZO WILLIAMS,<br><br>Defendant. | Case No. 13-cr-00764-WHO-1<br><br>**ORDER REGARDING DISCOVERY MOTIONS HEARD ON DECEMBER 17, 2015** |

On December 17, 2015, I heard argument on a variety of motions after providing the parties with my tentative rulings. Dkt. Nos. 733, 742. Below are my final rulings concerning the discovery-related motions.

**I.  DISCOVERY MOTIONS**

**A.  Elmore's Motion to Compel for Failure to Comply with the Order Setting Pre-trial and Trial Schedule[1] (Dkt. No. 554), and the Government's Request for Limited Reconsideration (Dkt. No. 628)**

My ruling on both of these motions is affected by the lack of a firm trial date. October 21, 2015 was the deadline for unredacted discovery to be disclosed under the Heightened Protective Order. This date was set after I made my concerns about the over-redaction of documents clear, and the government did not object to this date when it was set. The government's unilateral decision not to comply with that deadline without seeking leave of court, like its decision to stop briefing oppositions to motions because it had filed the interlocutory appeal, was unreasonable and should not be repeated.

That said, the government is correct that the dates in the Order Setting Pre-trial and Trial

---

[1] Joined by defendants A. Gilton, Dkt. No. 556, Gordon, Dkt. No. 558, Heard, Dkt. No. 559, B. Gilton, Dkt. No. 560, Robeson, Dkt. No. 562, Harding, Dkt. No. 564, Mercado, Dkt. No. 565, Ferdinand, Dkt. No. 574, Young, Dkt. No. 666, and Williams, Dkt. No. 686.

Schedule were tied to a firm trial date to balance the government's concerns about witness protection and the defense's need to prepare their cases for trial. Lacking a firm trial date, and because I felt that I needed additional information about the security of witnesses after the hearing on December 17, 2015, I held an ex parte hearing on December 29, 2015. Ms. Taylor, Mr. Joiner and Special Agent Millspaugh were present. I find that the government's concern for the safety of its witnesses in this case is well-founded. Accordingly, I have decided that it remains appropriate to tie the remaining deadlines to a (somewhat) realistic trial date, and to require that Jencks Act materials and transcripts will not be disclosed until six weeks before a firm trial date.

I remain hopeful that trial will proceed at some point this spring. For that to happen, the mandate must issue from the Ninth Circuit after any requests for rehearing have been determined. Assuming that the mandate issues before July 1, 2016, Jencks Act materials and transcripts will be disclosed the day after the mandate has issued and I will set the trial to commence approximately six weeks later.

For planning purposes, given these parameters it seems unrealistic to think that the trial will commence prior to June 6, 2016. This would require that the mandate be received by April 21, 2016, which is five weeks after the argument and six weeks before June 6, 2016. If the mandate is received after July 1, 2016, I will set an immediate status conference to pick a new trial date; I assume that the delay in commencing the trial by that point will have created insuperable scheduling conflicts.

With respect to the disclosure that had been scheduled for October 21, 2015, the government shall unredact documents showing the identifying information of civilians whom it does not intend to call as witnesses by January 8, 2016. It may maintain redactions on other documents until the exhibit list, witness list and jury questionnaire are due (March 6, 2016, assuming a June 6, 2016 trial date) except that it may maintain its redactions on Jencks documents, including the identities of the individuals making the statements, until six weeks before the trial. The documents may be disclosed to the defendants themselves three weeks before trial starts.

I will entertain argument regarding the trial date and disclosure dates at the hearing on

January 8, 2016.

**B.     Antonio Gilton's Motion re: Gang Expert[2] (Dkt. No. 542)**

The government's initial disclosure was wholly inadequate. The revised disclosure is fine as far as it goes. It does not seem to cover all of the topics listed in the initial disclosure. Sgt. Jackson is limited to the opinions disclosed in the revised disclosure, subject to the considerations described in footnote 4 to the Order Setting Pre-trial and Trial Schedule. Defendants' motion to strike Sgt. Jackson as an expert because of the government's inadequate initial disclosure is DENIED.

**C.     Heard and Robeson's Motion re: Other Experts[3] (Dkt. No. 548)**

The disclosures provided the necessary information for defendants to file *Daubert* motions. The government supplemented Agent Parker's disclosure. Again, the experts will be limited to the opinions disclosed.

**D.     Williams's Request for Racketeering Information[4] (Dkt. No. 575)**

The government has complied with its obligation to produce evidence of other racketeering acts not described in the Second Superseding Indictment and has described by bullet point in its opposition brief the acts involved. *See* Dkt. No. 675 at 2. It previously described one such act that it intended to use at trial. It is unclear whether the government intends to prove all the acts listed in the bullet points, and what crimes from the tape of defendant Young, wiretap materials or police reports from the gang task force it intends to use. By January 15, 2016, it should provide a good faith list of additional acts it intends to prove at trial in the form of a limited bill of particulars.

---

[2] Joining are defendants Elmore, Dkt. No. 557, Gordon, Dkt. No. 558, Heard, Dkt. No. 559, B. Gilton, Dkt. No. 560, Robeson, Dkt. No. 562, Harding, Dkt. No. 564, Mercado, Dkt. No. 565, Ferdinand, Dkt. No. 574, Young, Dkt. No. 666, and Williams, Dkt. No. 686.

[3] Joining are defendants A. Gilton, Dkt. No. 556, Elmore, Dkt. No. 557, Gordon, Dkt. No. 558, B. Gilton, Dkt. No. 560, Harding, Dkt. No. 564, Mercado, Dkt. No. 565, Ferdinand, Dkt. No. 574, Young, Dkt. No. 666, and Williams, Dkt. No. 686.

[4] Joining are defendants A. Gilton, Dkt. No. 587, Ferdinand, Dkt. No. 594, Harding, Dkt. No. 595, Gordon, Dkt. No. 596, Heard, Dkt. No. 597, Elmore, Dkt. No. 600, Robeson, Dkt. No. 607, B. Gilton, Dkt. No. 641, and Young, Dkt. No. 666.

### E. SFPD's Motion to Quash (Dkt. No. 542), and Williams's Motion for Discovery[5] (Dkt. No. 580)

I put this matter over until January 8, 2016 because the briefing obscured whether and to what extent the documents have already been produced and whether the government or SFPD has them.

Williams has been seeking these documents for months. At the hearing, the government represented that it has turned over the documents in its possession that should have been produced, and clarified that it has not received additional documents since the SFPD subpoena was served. I previously agreed with the government that it did not have *Brady* obligations concerning documents not in its possession but that it had a duty to obtain *Brady* material that it knew about or had reason to believe existed. Dkt. No. 409 at 4. When subpoenaed, SFPD appeared to argue that it did not have responsibility to respond because this investigation is "federalized." It backtracked at the hearing, but its failure to reply to Williams's opposition leaves many unanswered questions. I allowed SFPD and the government to file any further declarations or memoranda to explain their position by January 4, 2016. Williams may, but is not obligated to, file any response by January 7, 2016. His counsel was concerned that he would not have adequate time to do so. If that is an issue, I will address it at the hearing.

At the hearing on December 17, 2015, Williams's counsel made an as yet unbriefed request and argument regarding cell phone information. He is directed to meet and confer with the government and to file a motion in the event that agreement is not reached.

### F. Gordon's Motion to Compel DNA Discovery (Dkt. No. 566)

Gordon's motion, filed less than four weeks after the last hearing and prior to my decision on his previous motion for DNA discovery, continues the tortured procedural history regarding DNA discovery from the Contra Costa County laboratory that I outlined in my Order on November 25, 2015. *See* Dkt. No. 626. Here, Gordon seeks to compel production of previously requested audit reports and validation studies. The government failed to oppose the motion at all

---

[5] Joining are defendants A. Gilton, Dkt. No. 587, Ferdinand, Dkt. No. 594, Harding, Dkt. No. 595, Gordon, Dkt. No. 596, Heard, Dkt. No. 597, Elmore, Dkt. No. 600, Robeson, Dkt. No. 607, B. Gilton, Dkt. No. 641, and Young, Dkt. No. 666.

because it believed my Order resolved the matter. While it is unusual for a party to ignore a motion to compel without some explanation of its reasoning, I agree with the government that the prior hearings, agreements, and the Order address Gordon's motion.

During the briefing and hearings leading up to the Order, the government agreed to produce the audit reports, external and internal, and I required it to comply with that agreement. In the motion to compel, Gordon alleged that none have been produced that were more recent than 2008. If the government has not complied with its agreement and the Order in this regard, it shall do so at once.

Gordon previously requested "complete validation studies." The Order addressed that request and accepted the government's argument that the request was overbroad and unsupported by evidence showing its relevance. The government also reported that the laboratory's supervisor asserted that the laboratory had never provided anything other than validation summaries in discovery. The Order required that the government produce the summaries, and it did so.

Gordon narrowed his request to "the summary spreadsheets and chart, data and interpretational notes" for six of the twelve summaries provided. But he provided no new declarations or legal arguments, except that in his reply brief he cited *United States v. Morgan*, 53 F. Supp. 3d 732 (S.D.N.Y. 2014), an out-of-circuit district court opinion where more fulsome discovery concerning the validation studies had occurred. Gordon's request was again not limited as to time. In this frustrating context, where all of Gordon's evidence and argument would typically have been included in his opening motion filed on July 15, 2015, his motion to compel is more akin to a request for reconsideration of the ruling on the validation studies without any change in fact or law. On this record I DENY it.

I note that Gordon has a pending *Daubert* motion on January 22, 2016 that may shed further light on the importance of the documents he seeks, and if they appear material I may require their production in the interest of justice.

**G.      Williams's Motion Regarding Jury Composition[6] (Dkt. No. 586)**

Williams's motion seeks four things: (1) a finding of a violation of the Jury Selection and Service Act; (2) a finding of a due process clause violation; (3) a finding of an equal protection clause violation; and (4) discovery of additional information regarding the composition of the grand and petit juries in this case. *See* Dkt. No. 586 at 1. Williams provides no analysis of the records he received in discovery (other than an expert declaration submitted in another case, discussed below) to show that the Jury Plan or master jury wheel is not in compliance, that there is systematic exclusion of any group, or that the master jury wheel is not reasonably representative of the general community. His motion lacks evidentiary support and is DENIED.

Williams's motion relies heavily on an expert declaration submitted in a separate case before the Hon. Yvonne Gonzalez Rogers, *United States v. Cervantes*, No. 12-cr-00792-YGR (N.D. Cal. filed Nov. 6, 2012). In *Cervantes*, the defendants initially moved for the discovery of jury composition information of the sort that I have already required the government to produce in this case. *Id.* at Dkt. No. 515. Judge Gonzalez Rogers also required that the information be produced. *Id.* at Dkt. No. 517. The defendants then filed a jury composition motion nearly identical to Williams's. *Id.* at Dkt. No. 741. The only significant differences appear to be: (1) that the *Cervantes* motion acknowledges that the jury in that case had since returned another superseding indictment, and (2) that the *Cervantes* motion does not include the specific requests for further discovery included in Williams's motion. Judge Gonzalez Rogers ruled on the motion as follows:

> As the government accurately documents, H. Cervantes was previously provided with discovery relating to the composition of the Grand Jury sitting in January 2014. That Grand Jury was chosen from a 2011 jury wheel and returned the Second Superseding Indictment. However, since that time, the government sought and the Grand Jury returned the Third Superseding Indictment. To the extent this Grand Jury was chosen from a 2013 jury wheel, defendant H. Cervantes is entitled to the same types of materials that the Court previously ordered transmitted to him that relate to the

---

[6] Joining are defendants A. Gilton, Dkt. No. 587, Ferdinand, Dkt. No. 594, Harding, Dkt. No. 595, Gordon, Dkt. No. 596, Heard, Dkt. No. 597, Elmore, Dkt. No. 600, Robeson, Dkt. No. 607, B. Gilton, Dkt. No. 641, and Young, Dkt. No. 666.

> Third Superseding Indictment Grand Jury. *See Test v. United States*, 420 U.S. 28, 30 (1975). The request for updated materials is GRANTED.
>
> In light of this order of further discovery, and because H. Cervantes has not otherwise shown "substantial failure to comply" with the Jury Selection and Service Act or deprivation of his Due Process or Equal Protection rights, the Court DENIES H. Cervantes's motion to the extent he seeks a stay of proceedings. 28 U.S.C. § 1867(a) ("In criminal cases, . . . the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."); *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159 (9th Cir. 2014) (en banc) (explaining the three-part test set out in *Duren v. Missouri*, 439 U.S. 357, 364 (1979) to establish a prima facie violation of the fair cross-section requirement); *Hernandez-Estrada*, 749 F.3d at 1167 ("[S]tatistical proof of underrepresentation does not end the inquiry in equal protection cases. The challenging party must also establish discriminatory intent . . .").

*Id.* at Dkt. No. 788 (some internal citations omitted).

*Cervantes* does not support Williams's position that he is now entitled either to further discovery regarding the composition of the grand jury or to relief. Nothing more was ordered produced in *Cervantes* than has already been produced in this case. And Judge Gonzalez Rogers denied the motion to the extent that it sought relief on the merits.

Perhaps more discovery regarding the composition of the grand jury would be justified if Williams had made a stronger showing on the merits of his claimed violations of the Jury Selection and Service Act, the due process clause, and the equal protection clause. But I agree with Judge Gonzalez Rogers (who was faced with essentially the same showing made here) that the claims as presented are not promising. In particular, even assuming that the expert declaration provides a colorable grounds for a finding of underrepresentation, there is no showing of substantial failure to comply (for the purposes of the Jury Selection and Service Act), systematic exclusion (for the purposes of the due process claim) or discriminatory intent (for the purposes of the equal protection claim). It is not clear to me how the further discovery Williams seeks regarding the composition of the grand jury would produce evidence to support these missing links.

The one outstanding issue that the parties do not squarely address in their briefing is whether Williams is entitled to further discovery regarding the composition of the petit jury pool

1  in 2015.  *See* Dkt. No. 586 at 8 ("It also makes sense for this Court to order that the defense (and
2  government) be provided with information about the composition of the jury wheel from which
3  the petit jury in this case is going to be drawn.").  The government did not respond to this request.
4  I order that counsel for Williams and the government meet and confer to see if there is
5  disagreement over whether he should receive equivalent demographic information concerning the
6  2015 petit jury wheel as he did for the earlier grand jury wheels.  If the parties cannot reach
7  agreement, they should send me a joint letter of no more than five pages describing their points of
8  disagreement, and I will decide the issue.

## II.   SEVERANCE MOTIONS

I am reconsidering my intention to try all eleven defendants together for case management reasons.  I had hoped that the number of defendants would be significantly reduced by this time, but that has not occurred.  Given the confines of the courtroom, it would be logistically difficult to try everyone together, especially given the three or four months the government has estimated the trial will take.  The uncertainty of the trial date is also factoring into my reconsideration.

I remain confident that one trial (with a reduced number of defendants) would not jeopardize any defendant because of the spillover effect of the evidence, and there are obviously economies for the Court's time as well as benefits for witnesses and witness safety concerns with one trial.  But two trials with a smaller number of defendants in each reduces any potential prejudice and may obviate any *Bruton* issues.

Accordingly, at the hearing on January 22, 2016, we will discuss grouping.  I am tentatively inclined to have six defendants in the first group, including the four defendants allegedly involved in the Sneed murder, and five in the second, including the two allegedly involved in the Helton murder.  But before I make any decisions about the makeup of either group, I will consider input from the government and the defendants.  Parties shall submit their proposals in writing and file them on or before January 20, 2016.

Given this reconsideration, I will defer ruling on Williams's motion to sever the Sneed murder group from the rest of the defendants (Dkt. No. 579) (joined by A. Gilton, Dkt. No. 587, Ferdinand, Dkt. No. 594, Gordon, Dkt. No. 596, Heard, Dkt. No. 597, and B. Gilton, Dkt. No.

641), Harding's renewed motion to sever (Dkt. No. 588), and Williams's *Bruton* motion to sever from Young (Dkt. No. 576) (joined by Heard, Dkt. No. 597).  The *Bruton* motion would be moot if the defendants are in different groups.  While I am not ruling on Williams's motions, I note that defendants Heard, Gordon, and Ferdinand are not named in the Second Superseding Indictment as participating in the Sneed murder and I am unclear on what the basis of their requested joinders in Williams's severance motion is.[7]

**IT IS SO ORDERED**.

Dated: December 30, 2015



WILLIAM H. ORRICK
United States District Judge

---

[7] All motions to seal filed in conjunction with the motions heard on December 17, 2015 are GRANTED.