BRIAN J. STRETCH (CABN 163973)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
DAMALI TAYLOR (CABN 262489)
SCOTT D. JOINER (CABN 223313)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-6753
    william.frentzen@usdoj.gov
    damali.taylor@usdoj.gov
    scott.joiner@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 13-0764 WHO |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT BARRY GILTON'S MOTIONS IN LIMINE (ECF No. 975) |
| v. | |
| BARRY GILTON, | Date: June 27, 2016 |
| Defendant. | Time: 9:00 AM |
| | Court: Hon. William H. Orrick |
| | Courtroom 4, 17th Floor |

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

I.    RESPONSE TO MOTION IN LIMINE NO.  1 (BIBLE PAGE).......................................2

    A.    The Bible Page is Relevant and Admissible ................................................................3

    B.    The Bible Page Will be Properly Authenticated and Does Not Violate the Best
        Evidence Rule ...............................................................................................................4

    C.    The Bible Page is Not Hearsay ....................................................................................6

    D.    The Bible Page Is Not Barred by Rule 403 or the Rule of Completeness. ...................7

II.   RESPONSE TO MOTION IN LIMINE NO.  2 (EXCLUDE "UNCHARGED" ACTS)...............7

    A.    Evidence of Firearms and Violent Acts By CDP Against CDP Rivals ...........................10

    B.    Evidence of Pimping and Robbery ...............................................................................14

    C.    The Challenged Evidence is not Subject to Rule 404(b) or Unfairly Prejudicial
        Under Rule 403. ...........................................................................................................15

III.  RESPONSE TO MOTION IN LIMINE NO.  3 (MUGSHOTS)....................................17

IV.   RESPONSE TO MOTION IN LIMINE NO.  4 (NORTHCUTT) ...............................18

CONCLUSION............................................................................................................................19

CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)..................................................................................................... 1

*Reiger v. Christensen*,
    789 F.2d 1425 (9th Cir. 1985) ................................................................................... 18

*Salinas v. United States*,
    552 U.S. 52 (1997)....................................................................................................... 2

*United States v. Applins*,
    637 F.3d 59 (2d Cir. 2011) .................................................................................... 8, 11

*United States v. Basciano*,
    599 F.3d 184 (2d Cir. 2010) ............................................................................. *passim*

*United States v. Brannon*,
    616 F.2d 413 (9th Cir. 1980) ....................................................................................... 5

*United States v. Catabran*,
    836 F.2d 453 (9th Cir. 1988) ....................................................................................... 5

*United States v. Collicott*,
    92 F.3d 973 (9th Cir. 1996) ......................................................................................... 7

*United States v. Coonan*,
    938 F.2d 1553 (2d Cir. 1991) ................................................................................... 14

*United States v. Cruz–Ramirez*,
    No. CR 08–0730 WHA, 2011 WL 5599630 (N.D. Cal. Nov. 17, 2011)...................... 13

*United States v. Curtin*,
    489 F.3d 935 (9th Cir. 2007) .................................................................................. 1, 3

*United States v. Decines*,
    808 F.3d 785 (9th Cir. 2015) ................................................................................ 7, 16

*United States v. DeGeorge*,
    380 F.3d 1203 (9th Cir. 2004) ................................................................................... 15

*United States v. DiNome*,
    954 F.2d 839 (2d Cir. 1992)............................................................................ 8, 11, 16

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) .................................................................... 8, 10, 14, 16

*United States v. Fiander*,
    547 F.3d 1036 (9th Cir. 2008) ..................................................................................... 2

*United States v. Frega*,
    179 F.3d 793 (9th Cir. 1999) ....................................................................................... 2

*United States v. Gonzalez-Flores*,
    418 F.3d 1093 (9th Cir. 2005) ........................................................................ 16

*United States v. Hampton*,
    464 F.3d 687 (7th Cir. 2006) .......................................................................... 5

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ...................................................................... 17

*United States v. Holmquist*,
    36 F.3d 154 (1st Cir. 1994) ............................................................................ 5

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir.1989) ......................................................................... 11

*United States v. Lillard*,
    354 F.3d 850 (9th Cir. 2003) ........................................................................ 15

*United States v. Martinez-Rodriguez*,
    472 F.3d 1087 (9th Cir. 2007) ...................................................................... 15

*United States v. Matta-Ballesteros*,
    71 F.3d 754 (9th Cir. 1995) ............................................................................ 5

*United States v. May*,
    622 F.2d 1000 (9th Cir.1980) ......................................................................... 6

*United States v. Mills*,
    704 F.2d 1553 (11th Cir.1983) ..................................................................... 17

*United States v. Montgomery*,
    384 F.3d 1050 (9th Cir. 2004) .................................................................. 12, 16

*United States v. Neapolitan*,
    791 F.2d 489 (7th Cir.1986) ......................................................................... 13

*United States v. Reyes*, No. 2:11-CR-00077-PPS, 2014 WL 4722505 (N.D.
    Ind. Sept. 23, 2014)................................................................................. 13, 17

*United States v. Rizk*,
    660 F.3d 1125 (9th Cir.2011) ....................................................................... 13

*United States v. Rubio*,
    727 F.2d 786 (9th Cir. 1983) ........................................................................ 16

*United States v. Salerno*,
    108 F.3d 730 (7th Cir. 1997) ....................................................... 12, 13, 14, 16

*United States v. Tank*,
    200 F.3d 627 (9th Cir. 2000) ...................................................................... 4, 5

*United States v. Terry*,
    911 F.2d 272 (9th Cir. 1990) .......................................................................... 4

*United States v. Torres*,
    794 F.3d 1053 (9th Cir. 2015) ........................................................................ 6

*United States v. Torres-Flores,*
   827 F.2d 1031 (5th Cir. 1987) ........................................................................ 18

*United States v. Waters,*
   627 F.3d 345 (9th Cir. 2010) ........................................................................... 5

*United States v. Williams,*
   989 F.2d 1061 (9th Cir. 1993) ......................................................................... 16

## STATUTES

18 U.S.C. § 1962 ............................................................................................. *passim*

## RULES

Fed. R. Evid. 401 ..................................................................................... 1, 3, 15

Fed. R. Evid. 403 ................................................................................... 7, 16, 18

Fed. R. Evid. 801 ........................................................................................ 5, 6

Fed. R. Evid. 1002 ........................................................................................... 4

Fed. R. Evid. 1003 ........................................................................................... 4

**INTRODUCTION**

The United States respectfully submits the following responses to defendant Barry Gilton's motions *in limine*, which seek to exclude the following evidence: (1) a dog-eared Bible passage found in the defendant's bedroom shortly after the murder of his daughter's boyfriend (the passage reads "And Reuben answered them, saying, 'Spake I not unto you, saying, Do not sin against the child; and ye would not hear?' Therefore, behold, also his blood is required'"); (2) evidence of acts by CDP co-conspirators who have not been assigned to the first trial group; (3) "any and all" mug shots; and (4) "any and all" evidence referencing Michael Northcutt. Gilton argues that such evidence is inadmissible hearsay (the Bible page), irrelevant under Federal Rule of Evidence 401, inadmissible under Rule 404(b), and/or unfairly prejudicial under Rule 403. Regarding Northcutt, defense counsel argues that because he previously represented Northcutt, any evidence relating to Northcutt is inadmissible. Each motion is defective. The challenged evidence is admissible and directly relevant to the charges in the Second Superseding Indictment. None of it is unfairly prejudicial. Defendant Gilton's motions should be denied accordingly.[1]

Rule 402 states that "[a]ll relevant evidence is admissible," except as otherwise provided by the Constitution, Congress, or other evidentiary or Supreme Court rules. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007). "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue." *Id.* The fact to be proved "may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Advisory Committee Notes, Fed. R. Evid. 401. Further, in considering the broad definition of relevance under Rule 401, the Supreme Court holds that "[t]he Rule's basic standard of relevance ... is a liberal one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993).

All of the evidence Gilton seeks to exclude is relevant to the charges in the Second Superseding

---

[1] Following the hearing on May 6, 2016, the parties met and conferred and agreed that responses to motions in limine could be filed without objection after the original deadline.

Indictment.  In evaluating Gilton's motions, it is important to keep in mind that the RICO statute makes it unlawful for any person "to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."  *See* 18 U.S.C. § 1962(d).  "The elements predominant in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity," but "[t]he relevant statutory phrase in § 1962(d) is 'to conspire.'"  *Salinas v. United States*, 552 U.S. 52, 62-3 (1997).  Thus, it is the agreement itself to conduct the affairs of an enterprise through a pattern of racketeering that is the crime.  In other words, "[u]nder *Salinas*, [the defendant] did not need to commit the substantive offense . . . in order to be guilty of the RICO conspiracy.  Instead, it is sufficient that he '*knew about and agreed* to facilitate the scheme.'"  *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008) (quoting *Salinas*, 522 U.S. at 66 (additional citations omitted) (emphasis added)).

For a RICO conspiracy, "[t]here is no requirement of some overt act or specific act . . . unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'"  *Salinas*, 522 U.S. at 63 (quoting 18 U.S.C. § 371).  "[I]n order to convict a defendant on a RICO conspiracy charge, [the court] 'does not require proof that [a defendant] participated personally, or agreed to participate personally, in two predicate offenses.'"  *United States v. Frega*, 179 F.3d 793, 810 n.21 (9th Cir. 1999) (quoting *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984).

## I.      RESPONSE TO MOTION IN LIMINE NO.  1 (BIBLE PAGE)

Defendant Barry Gilton first seeks to exclude a dog-eared Bible page which was found in his bedroom on June 9, 2012.  The Second Superseding Indictment alleges that Barry Gilton, his wife Lupe Mercado, Antonio Gilton, and Alfonzo Williams, all murdered Calvin Sneed on June 4, 2012.  Sneed was the boyfriend of Barry Gilton's daughter.  The Bible passage at issue reads:

> And Reuben answered them, saying, 'Spake I not unto you, saying, Do not sin against the child; and ye would not hear?' Therefore, behold, also his blood is required.

As the defendant admits, the Bible with the folded page was found "on a nightstand in Mr. Gilton's and his wife's [defendant Lupe Mercado's] bedroom."  (ECF No. 975.)  He then goes on to argue, however, that the Bible page is "not relevant to Mr. Gilton, or any of the other defendants…" because the government cannot establish that it was Mr. Gilton who folded the page.  (*Id.*)  This argument defies

common sense and ignores the rules of evidence.

In support, the defendant offers four theories: (1) the Bible page is irrelevant; (2) the Bible page cannot be authenticated and violates the best evidence rule; (3) the "rule of completeness" somehow requires its exclusion; and (4) the folded portion of the Bible page is hearsay. Each of these arguments lacks merit.

## A.     The Bible Page is Relevant and Admissible

Turning first to relevance, the Bible passage is powerful evidence that Barry Gilton and his wife intended to murder Calvin Sneed. As noted above, the passage can fairly be read to require blood in exchange for a "sin against the child." Sneed, who was their daughter's boyfriend, was also thought to be her pimp. It would be logical for the jury to infer, based on the dog-eared Bible passage found on the nightstand of their bedroom, that Gilton and his wife believed that Sneed had sinned against their child and that vengeance was necessary and appropriate. Nothing more is required to establish relevance. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue." *Id*. The fact to be proved "may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Advisory Committee Notes, Fed. R. Evid. 401. The Bible passage tends to make it more probable that Gilton and his wife murdered Calvin Sneed. No doubt that is why Gilton now seeks to keep it from the jury. *See also Curtin*, 489 F.3d at 948 (finding stories involving sexual acts between adults and minors relevant because it "clearly illuminated [defendant's] thoughts and his subjective intent to carry out" criminal sex acts with children).

Gilton further argues that it is unclear who tabbed the Bible because the book was found in the bedroom that he shared with his wife. He asks rhetorically: Who folded over the page? Whose state of mind is being proven? Gilton will be free to make such arguments to the jury. But in terms of relevance, the fact remains that the Bible page was found on the nightstand of the bedroom he shared with his wife and co-defendant, Lupe Mercado. Perhaps Gilton will argue that the nightstand was one

used by his wife, but such arguments go to weight, not relevance and admissibility.  The Ninth Circuit's decision in *United States v. Terry*, 911 F.2d 272 (9th Cir. 1990), illustrates the defect in Gilton's analysis.  In *Terry*, a felon in possession case, the evidence at trial "centered on the fact that the firearm was found in the closet of [the defendant's] bedroom," where the defendant and his wife were the "sole occupants of the bedroom where the firearm was found."  *Id.* at 278.  The jury found the defendant guilty of possessing the gun, and the Ninth Circuit affirmed, noting that a "a rational trier of fact could find that Terry's knowledge of the gun's location and his unhindered access to it whenever his wife was not observing gave him constructive possession of the weapon."  *Id.*  There was no question, however, that the gun was improperly admitted simply because the defendant's wife also had access to the bedroom closet.  The same is true here.  The fact that the defendant's wife could have tabbed the page does not destroy the Bible passage's relevance or undermine its admissibility.  To the contrary, it reinforces both.  Lupe Mercado is charged with the same murder as Gilton, and the relevance of the Bible passage applies to both Gilton and his wife.

**B.**     **The Bible Page Will be Properly Authenticated and Does Not Violate the Best Evidence Rule**

Nor does the evidence violate the "best evidence rule."  Under Rule 1002, a photocopy of a document is just as good as the original.  *See* Fed. R. Evid. 1002.  The only exception is Rule 1003—commonly referred to as the "best evidence rule"—which allows photocopies to be admitted "unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid. 1003.

Gilton claims that the photocopy should be withheld from the jury because there is a "genuine issue" regarding the Bible passage's authenticity.  (ECF No. 975 at 4.)  But Gilton has not identified any issue with the original.  He also fails to acknowledge Federal Rule of Evidence 901, which sets a low bar for authentication.  Under Rule 901, the government "need only make a prima facie showing" so that "a reasonable juror could conclude" that the evidence is what the government claims it is.  *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (internal quotation marks and alterations omitted).  If the opposing party argues that the evidence has been "material[ly] alter[ed]," that goes to the evidence's weight, not admissibility.  *Id.*  As made clear in the sworn testimony attached to the defendant's motion,

Lieutenant Braconi will be able to establish that the photocopy accurately depicts the page that he discovered in the Bible on the nightstand in the defendants' bedroom. Nothing more is required. *See, e.g.*, *United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) (holding that "evidence that the photographs accurately depicted events in the bank … provided a sufficient foundation to admit the photographs."); *United States v. Hampton*, 464 F.3d 687, 690 (7th Cir. 2006) (photocopies that purported to be certificates of insurance that the Federal Deposit Insurance Corporation had issued to banks were admissible duplicates in lieu of originals in defendant's prosecution for robbing federally insured banks); *United States v. Holmquist*, 36 F.3d 154, 167-68 (1st Cir. 1994) (photocopy of bank check drawn on the Bank of China and payable to defendant admissible despite possibility that photocopy had been doctored or constituted a hoax).

Indeed, both parties apparently agree that Exhibit 991 is what the government claims it is— a photocopied page of a Bible that was found in the bedroom shared by Gilton and his wife, co-defendant Lupe Mercado. Though Lieutenant Braconi highlighted the relevant passage, case after case explains that such alteration imposes no bar to admissibility. *E.g.*, *Tank*, 200 F.3d at 630 (claims of alteration are fodder for cross-examination, not a hurdle to admissibility); *United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995) (claimed inconsistencies between the government's copy of the evidence and the originals "go to the weight, rather than the admissibility, of the evidence"); *United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988) (same).

Gilton also argues that it would be "unfair" to present the highlighted passage because it draws the jury's attention to the relevant verse. (ECF No. 975 at 4.) This argument makes little sense. As with any documentary exhibit, the government will be entitled to display the page to the jury and then highlight the relevant passage. This is a non-issue, and does not provide a legitimate basis for excluding key evidence.[2]

### C. The Bible Page is Not Hearsay

Nor is the Bible page hearsay. To be hearsay, there must be an "assertion," made by a person, that is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a)-(c). Imperatives and

---

[2] To the extent this is a concern, the government can present a clean copy to the jury and then highlight the relevant passage during argument. The result will be the same.

questions are not hearsay unless intended as an assertion. *See, e.g.*, *United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010) ("'Tell the truth' is an imperative and not an assertion of fact. It therefore does not fall within the meaning of 'statement' in Rule 801(a) and cannot be hearsay, because a nonassertion cannot have been offered to prove the truth of the matter asserted."). Nor are photographs. *United States v. May*, 622 F.2d 1000, 1007 (9th Cir.1980). Federal Rules of Evidence 801(c) and 802 prevent the use of an out-of-court statement to prove the truth of the matter asserted. However, there is no statement here – let alone an assertion of fact that could be used to prove the truth of the matter asserted. The dog-eared Bible page is relevant to the defendants' state of mind, not because of any assertions which could be offered for their truth.

The fact that the page was folded over does not change the analysis. Although hearsay "statements" may include nonverbal conduct, such conduct must be intended as an assertion. Fed. R. Evid. 801(a). Some nonverbal conduct—e.g., nodding one's head to say yes, shaking one's head to say no—is "clearly the equivalent of words, assertive in nature, and to be regarded as a statement." *See* Advisory Committee Notes to Rule 801. But when it comes to conduct, the rule is "worded as to place the burden upon the party claiming that the intention existed; ambiguous and doubtful cases will be resolved … in favor of admissibility." *Id.* "[N]othing is an assertion unless intended to be one." *United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015) (quoting Advisory Committee Notes to Rule 801). Gilton has not met his burden of showing that the folded page was intended to be an assertion.

Indeed, it makes little sense to conclude that such physical evidence —a dog-eared Bible page— could be intended as an assertion (let alone an assertion that the government could somehow offer for truth of the matter asserted). Gilton's attempts to transform the folded page into some kind of assertion underscore the strained nature of his argument. He argues that the folded page "constitutes an intended assertion by the actor regarding his belief in the validity of the passage… the folded page was to tell himself that it was significant." (ECF No. 975 at 3.) This is precisely the type of "ambiguous and doubtful" argument regarding an intended assertion that should be resolved in favor of admissibility. Advisory Committee Notes to Rule 801; *see also Torres*, 794 F.3d at 1059. But even accepting the defendant's awkward characterization, the folded page still cannot constitute hearsay. The statements "look at this Bible page" or "I think this page is important" are not assertions of fact. The first is an

imperative.  The second goes to state of mind.  Neither one qualifies as hearsay.  There is simply no

statement of fact here which can be offered for the truth of the matter asserted.

**D.**     **The Bible Page Is Not Barred by Rule 403 or the Rule of Completeness.**

Gilton also claims that under the rule of completeness, "[a]dmission of the Bible page requires

admission of the entire Bible."  (ECF No. 975 at 4.)  He goes on to complain that reading the entire

Bible would overwhelm the trial with "unfair prejudice, confusion, and the waste of time."  *Id.*  Gilton is

mistaken on both accounts.  First, the rule of completeness applies only "when one party has made use

of a portion of a document, such that misunderstanding or distortion can be averted only through

presentation of another portion…" *United States v. Collicott*, 92 F.3d 973, 978, 983 (9th Cir. 1996)

(citation omitted).  There is no such distortion here.  Accordingly, it remains "perfectly proper to admit

segments of [written materials] without including everything, and adverse parties are not entitled to offer

additional segments just because they are there and the proponent has not offered them."  *Id.* at 983

(citation and internal quotation marks omitted).  Because Gilton's all-or-nothing approach is defective,

his second argument also fails: the jury will not be forced to review every chapter and verse of the Bible.

Given its high probative value, admitting the passage will not violate Federal Rule of Evidence

403.  Rule 403 permits a district court to exclude relevant evidence only if the evidence's probative

value is *substantially* outweighed by the danger of *unfair* prejudice (emphasis added).  *See, e.g.*, *United

States v. Decines*, 808 F.3d 785, 791 (9th Cir. 2015) ("Although the admission of the evidence may

harm the defendants' case, that is not reason to exclude it under Rule 403, which refers only to *unfair*

prejudice.") (emphasis in original).  Evidence is unfairly prejudicial if it suggests a decision on an

improper basis.  *See* Fed. R. Evid. 403 Adv. Comm. Note.  There is nothing in the Bible passage that

would suggest a decision on an improper basis.  To the contrary, the dog-eared page is highly probative

of Gilton and Mercado's intent to murder Calvin Sneed.  The defendant's motion should be denied

accordingly.

**II.**     **RESPONSE TO MOTION IN LIMINE NO.  2 (EXCLUDE "UNCHARGED" ACTS)**

In his second motion *in limine*, Defendant Barry Gilton seeks to sanitize the evidence against

him and insulate himself from the RICO conspiracy charge at the center of this case.  Gilton argues that

the Court should preclude evidence of "any and all uncharged conduct," including those acts listed by

the government in its pretrial notice (ECF No. 851), because the Court severed the case into two trial groups. Gilton, who is a member of the first trial group, claims that exclusion is required because the uncharged acts "have absolutely no connection to the crimes with which the first group of defendants have been charged. All of the uncharged crimes concern other individuals, not any of the defendants in the first group." (ECF No. 975 at 7.) Gilton is mistaken and his motion should be denied accordingly.

The government must prove beyond a reasonable doubt that the defendants agreed that an enterprise would be established and that the defendants were aware of the general contours of the conspiracy. *See, e.g.*, *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011). As part of proving that conspiracy, it is a fundamental tenet of RICO law that:

> [P]roof of the enterprise and pattern elements of racketeering "may well entail evidence of numerous criminal acts by a variety of persons." A single pattern of racketeering may be common to a number of defendants and, in such circumstances, **even though individual defendants "may reasonable claim no direct participation" in the acts of others, "evidence of those acts is relevant to the RICO charges against each defendant**." Specifically, the "various criminal activities" of racketeering confederates are admissible against each defendant "to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities."

*United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010) (emphasis added), *quoting United States v. DiNome*, 954 F.2d 839, 843-44 (2d Cir. 1992) (footnote omitted); *see also United States v. Fernandez*, 388 F.3d 1199, 1241-46 (9th Cir. 2004) (relying on *DiNome* to reject claim that denial of severance motion resulted in admission of unfairly prejudicial "spillover" evidence; explaining that, in racketeering case, same evidence of criminal acts would have been admitted in separate trials anyway). Accordingly, it makes little difference whether the evidence concerns the first or second group of trial defendants. Evidence of the additional acts complained of by Gilton remains admissible to prove the charged CDP enterprise and pattern elements of the racketeering conspiracy.

Although Gilton casts his motion broadly to encompass "any and all uncharged conduct," he identifies only a handful of incidents in his analysis. Many of these also appear in the Second Superseding Indictment. Specifically, Gilton challenges evidence concerning the following:

1. Evidence regarding the October 18, 2011 murder of KOP rival Donte Levexier by defendants Ferdinand, Gordon and unindicted CDP member Vernon Carmichael;

2. Evidence and communications concerning defendant Young persuading, inducing, enticing and coercing individuals to engage in prostitution – including individuals under the age of 16;

3. Statements by witnesses that defendant Williams has been engaged in persuading, inducing, enticing and coercing individuals to engage in prostitution.

4. Evidence from U.S. v. Cheeves and Elmore, CR09-1030 CRB. (This evidence pertains to Overt Act V, which alleges that on January 8, 2009, Defendant Elmore brandished and discharged a 9 mm assault style pistol during the funeral of a rival gang member);

5. Evidence regarding the attempted kidnapping of a prostitute by defendant Robeson (Overt Act L);

6. Evidence regarding the pimping of a 13 year old minor by defendant Robeson (Overt Act I);

7. Evidence from U.S. v. Gregory Walker, CR10-0772 WHA (this evidence pertain to the June 3, 2010 shootout on Turk Street between CDP members Greg Walker and Julius Hughes and several members of rival street gang KOP);

8. Evidence concerning the pimping of a 15 year old minor (Overt Act B) and others by defendant Young;

9. Conversations wherein defendant Young discusses various crimes, including:[3]

    a. Defendant Young's admission that he murdered KOP member Jelvon Helton;

    b. Defendant Young's statements regarding his partners and the crimes they are involved in;

    c. Defendant Young's statements regarding how many murders he has committed;

    d. Defendant's Young's statements regarding other women who work for him as prostitutes; and

    e. Defendant Young's statements regarding hiding firearms;

10. Evidence that from on or around September 23, 2011 through October 5, 2011, defendants Harding and Gordon committed a series of robberies (including evidence of those specific robberies)

(ECF No. 975 at 6-7.)[4] These acts can be grouped into three relevant categories: (1) incidents involving firearms and violent acts by CDP members against CDP rivals (items 1, 4, 9); (2) activities related to pimping and prostitution by CDP members (items 2, 3, 5, 6, 8, 9); and (3) robberies committed by CDP members (item 10). All of this evidence falls squarely within the contours of the RICO conspiracy alleged in the Second Superseding Indictment.

    The Second Superseding Indictment charges Defendant Barry Gilton with conspiring to conduct

---

[3] Although defendant bases his argument on the fact that the acts were committed by individuals who are not going to trial in the first group, the government notes that defendant Young is a member of the first trial group.

[4] Defendant Gilton also lists "wiretap recordings," but because he does not challenge any recordings listed on the government's exhibit list, the government is unable to respond to this aspect of the motion and it should be denied for lack of specificity.

the affairs of CDP through a pattern of racketeering activity. (SSI ¶¶ 15-16.) The purposes of the CDP enterprise included "[p]reserving and protecting the power, territory, reputation, and profits of the enterprise, its members, and family members, through the use of intimidation, violence, threats of violence, assaults and murder," as well as "[p]romoting and enhancing the enterprise and the activities of its members and associates, including, but not limited to, murder, attempted murder, conspiracy to murder… robbery, pimping, and other criminal activities." (*Id.* ¶ 9.) In addition, the means and methods of the CDP enterprise included protecting and expanding "the enterprise's criminal operation by committing… violence, including murder, assaults, intimidation, and threats of violence directed against rival gang members, rivals in general, those who disrespected CDP, its members, associates, and families." (*Id.* ¶10.a.) In addition, the indictment alleges that "[m]embers of CDP used the enterprise to murder, attempt to murder, assault, and threaten those who posed a threat to the enterprise…. It was further part of the means and methods of the enterprise that the defendants and other members and associates of CDP agreed that acts of violence, including murder, attempted murder, and assault, would be committed by members and associates of CDP against rival gang members and others when it suited the enterprise's purposes." (*Id.* ¶¶ 10.c, 13.) Related to the violent purposes and methods of the enterprise, the indictment alleges that "the defendants and other members and associates of CDP agreed to purchase, possess, maintain, use, and circulate a collection of firearms for use in criminal activity by the members and associates of CDP." (*Id.* ¶ 12.) In addition to violence and firearms, pimping and robbery were also at the heart of the CDP conspiracy. In this regard the indictment alleges a number of overt acts involving pimping and robbery by CDP members. It also makes clear that "the defendants and other members and associates of CDP agreed… to commit robbery, extortion, to engage in pimping, including the pimping of minors, and other crimes, and to conceal their criminal activities by obstructing justice, threatening and intimidating witnesses, and other means." (*Id.* ¶ 14.) All of the challenged evidence is therefore relevant and admissible to prove the CDP racketeering conspiracy, including the enterprise and pattern aspects of the same. Each category is addressed below.

### A. Evidence of Firearms and Violent Acts By CDP Against CDP Rivals

Turning first to firearms and violent acts by CDP against its rivals, evidence of the October 2011 murder Donte Levexier (item 1 above), the June 2010 shootout across Turk Street between CDP

members Julius Hughes and Greg Walker and rival KOP members (item 9 above), and the January 2009 funeral shooting where defendant Elmore brandished and discharged a 9mm assault style pistol during the funeral of a rival gang member (item 4 above) (Joiner Decl., Ex. B), are all highly relevant to prove the charged CDP enterprise and pattern elements of the racketeering conspiracy.

Violence against rival gangs and gang members is classic RICO conspiracy evidence. For example, in *United States v. Applins*, the Second Circuit noted that the "[e]vidence at trial included detailed descriptions of Elk Block's disputes and skirmishes with rival gangs. Applins testified that Elk block was on 'relatively good terms' with the nearby Boot Camp gang until 1999. The period of urban tranquility ended when two Boot Camp members—Jeffrey Connors and Tron Wallace—robbed Applins of ten ounces of crack-cocaine." *Applins*, 637 F.3d at 68. The court then went on to identify multiple episodes of violence against gang rivals as evidence supporting the charged RICO conspiracy. *Id.* at 68-71. Similarly, in *United States v. DiNome*, the Second Circuit found that "evidence of numerous crimes, including the routine resort to vicious and deadly force to eliminate human obstacles, was relevant to the charges against each defendant [regardless of the defendant's personal involvement] because it tended to prove the existence and nature of the RICO enterprise… Such evidence was also relevant to prove a pattern of racketeering activity by each defendant." *DiNome*, 954 F.2d at 843. In reaching its holding, the Court explained that "[i]n some cases both the relatedness and the continuity necessary to show a RICO pattern may be proven through the nature of the RICO enterprise. For example, two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise. The nature of the enterprise may also serve to show the threat of continuing activity." *Id.* (citing *United States v. Indelicato*, 865 F.2d 1370, 1383–84 (2d Cir.1989) (en banc)); *see also Basciano*, 599 F.3d at 207 (holding that district court "erred in concluding that predicate acts charged to co-defendants 'do nothing to establish the RICO charge against Basciano.'") (citation omitted).[5]

---

[5] The Second Circuit also made clear that evidentiary considerations in RICO conspiracies are far different than a typical case:

As our colleague, Judge Lynch, has explained, the law generally excludes from trial evidence of criminal conduct by persons other than the defendant because it "may distract the jury from its responsibility of deciding what the evidence shows about a particular act." Gerard E. Lynch, *RICO: The Crime of Being a Criminal, Parts III & IV,* 87 Colum. L.Rev. 920, 944 (1987). But

The same is true here regarding violence between CDP and KOP, as well as other rival gangs. Donte Levexier was a KOP gang member who was murdered in his mother's driveway by CDP members Adrian Gordon, Esau Ferdinand and Vernon Carmichael on October 18, 2011. CDP members suspected Levexier of being involved in the shooting of CDP member Greg Walker and his pregnant girlfriend (who was paralyzed from the waist down as a result) the year prior.[6] Both shootings stem from the feud that started between CDP and KOP in August 2008 when CDP members Charles Heard and Reginald Elmore murdered KOP members Andre Helton and Isiah Turner (SSI ¶ 12.t., Counts 6-8). This triggered a gang war between CDP and KOP which resulted not only in the Levexier homicide in October 2011, but also the attempted murder of KOP member Patrick McCree by defendant Adrian Gordon and fellow CDP member Vernon Carmichael just five months prior, on May 20, 2011 (charged as Overt Act AA, Counts 9-11).[7] (*See, e.g.*, Ramey Warrant attached as Exhibit A to the Declaration of Scott D. Joiner ("Joiner Decl.").) These violent episodes, in turn, followed the June 3, 2010, shootout between KOP and CDP members across Turk Street and the murder of KOP member Jelvon Helton by defendant Jaquain Young on November 1, 2010 (charged as Overt Act Y and Counts 18-20). (*Id.*) Such evidence falls squarely within the charged time period and is inextricably intertwined with the RICO conspiracy. It is therefore directly relevant and admissible to the charged conspiracy. Such evidence is not subject to the limitations of Rule 404(b). *See United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) ("We conclude that each action was 'inextricably intertwined' with the conspiracy, and therefore not subject to Rule 404(b), because each occurred within the temporal scope of the conspiracy and comprised the conspiracy."); *see also United States v. Salerno*, 108 F.3d 730, 739 n.6 (7th Cir. 1997) (rejecting challenge to evidence of other crimes because all of the evidence fell within the 16-year

---

where racketeering is the charge, "the jury is entitled to rely not only on evidence of the defendant's own crimes, but also on evidence of the crimes of those with whom he is alleged to have thrown in his lot" because the judgment required is not simply what acts the defendant committed at particular moments, but whether those acts were "parts of a pattern," *i.e.*, "committed as part of [defendant's] association with a subculture of crime." *Id.*

*Basciano*, 599 F.3d at 207 n.17.

[6] The day prior to that shooting, CDP member Julius Hughes was killed in a shootout with KOP members in Newark, CA. (Joiner Decl., Ex. A.)

[7] McCree himself was believed to have been involved in murdering CDP member Fred Maye, six days earlier, on May 14, 2011. (Joiner Decl., Ex. A.)

period alleged in the indictment).

Defendant Gilton erroneously argues that such evidence constitutes "unrelated crimes removed in both time and circumstance." (ECF No. 975 at 6.) To the contrary, all of the incidents are closely linked in time and circumstance and each of them occurred within the alleged timeframe of the conspiracy (indeed, the Levexier murder occurred less than eight months before the defendant murdered Calvin Sneed). Each of the challenged incidents also bears directly on the alleged CDP enterprise, pattern of racketeering acts, and contours of the conspiracy. The fact that the defendant claims that he did not participate directly in these acts is irrelevant. "[T]the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir.2011); *see also United States v. Cruz–Ramirez*, No. CR 08–0730 WHA, 2011 WL 5599630, at *3 (N.D. Cal. Nov. 17, 2011); *United States v. Neapolitan*, 791 F.2d 489, 506 (7th Cir.1986) ("[E]vidence of unindicted crimes, while irrelevant as predicate acts used to establish a RICO violation, can serve as circumstantial evidence of the defendant's connection to the enterprise and/or the conspiracy."). The district court in *United States v. Reyes* went through the same analysis on similar facts:

> [Defendant argues that] the government was allowed to get in too much evidence of the Imperial Gangsters' murderous and violent behavior, to the point of being cumulative and unfairly prejudicial. Reyes was charged with being part of a gang conspiracy. The government therefore had to prove that Reyes and others agreed to jointly participate in a criminal enterprise, in this case a street gang. By definition, then, it would have been insufficient to offer evidence only of crimes that Reyes committed. The government needed to show that there was a criminal enterprise underway that was larger than just Reyes himself. To that end, the government offered evidence of drug sales by various members of the gang, and of three murders other than the one with which Reyes was charged personally. That is, Reyes had no personal involvement in those three murders other than being a part of the gang in the name of which the murders were committed. Reyes's argument during trial, and again now, is that the evidence of several gang murders was overly prejudicial to Reyes, and led the jury to convict him because he was generally tarnished by testimony about wanton street violence and photos of bullet-riddled bodies

*United States v. Reyes*, No. 2:11-CR-00077-PPS, 2014 WL 4722505, at *14 (N.D. Ind. Sept. 23, 2014). The trial court rejected the defendant's claim, however, and found that the three murders "were all relevant to proving that the Imperial Gangsters were a criminal enterprise." *Id.* at *15. The same reasoning and result should apply here.

As the Seventh Circuit observed in *Salerno*, "[i]t is difficult to comprehend how one could prove

the existence of an enterprise comprised of 'a group of individuals associated in fact,' and organized solely for the purpose of committing crimes, without presenting evidence of the crimes that detail the structure, common purpose, and continuity of the charged enterprise. Thus, we have allowed the government to use uncharged criminal acts in a RICO prosecution to prove the nature of an enterprise and the defendant's participation in it." 108 F.3d at 739. The Ninth Circuit similarly held that, "[c]ommon sense suggests that the existence of an association-in-fact is often-times more readily proven by what it *does,* rather than by abstract analysis of its structure." *United States v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004) (citing *United States v. Coonan*, 938 F.2d 1553, 1559 (2d Cir. 1991) (emphasis in original) (internal citations and quotation marks omitted)). Accordingly, as noted above, "proof of the enterprise and pattern elements of racketeering may well entail evidence of numerous criminal acts by a variety of persons. A single pattern of racketeering may be common to a number of defendants and, in such circumstances, even though individual defendants may reasonably claim no direct participation in the acts of others, evidence of those acts is relevant to the RICO charges against each defendant." *Basciano*, 599 F.3d at 207 (citation and internal quotations omitted). The same is true here. The violent acts of Gilton's co-conspirators against CDP rivals remain relevant and admissible to prove the RICO conspiracy charge against him.

### B. Evidence of Pimping and Robbery

Evidence of pimping and robberies committed by CDP members is also admissible against Gilton for the same reasons.[8] As noted above, the alleged conspiracy included the acts Gilton now challenges. For instance, the indictment alleges that the conspiracy was aimed at "[p]reserve[ing] and protect[ing] the power, territory, reputation, and profits of the enterprise, its members, and family members," as well as, "[p]romoting and enhancing the enterprise and the activities of its members and associates, including, but not limited to… robbery, pimping, and other criminal activities." (*Id.* ¶ 9.) The indictment makes clear that, as part of the means and methods of the conspiracy, CDP members agreed to "commit robbery… [and] engage in pimping, including the pimping of minors." (*Id.* ¶ 14.) Accordingly, the overt acts charged in the Second Superseding indictment include multiple examples of

---

[8] Although, the defendant characterizes this as uncharged conduct, almost all of the challenged evidence of pimping and prostitution pertains to specifically alleged overt acts.

pimping and robbery.  (*Id.* ¶ 17.)

Based on these allegations, it is difficult to comprehend, as Gilton now argues, that direct evidence of his co-defendants' and co-conspirators' involvement in harassing and recruiting a prostitute, enticing a minor to engage in prostitution, kidnapping a prostitute, and committing multiple robberies do not have "any tendency to make the existence of" the charged RICO enterprise more probable than it would be without the evidence.  Fed. R. Evid. 401.  To the contrary, these allegations go to the core of the CDP enterprise and the means by which the racketeering conspiracy was carried out.  Gilton's motion should be denied accordingly.

### C.    The Challenged Evidence is not Subject to Rule 404(b) or Unfairly Prejudicial Under Rule 403.

As the discussion above illustrates, none of the challenged evidence is subject to Rule 404(b) because it is directly relevant to the charged conspiracy, enterprise, and pattern of racketeering acts.[9] Federal Rule of Evidence 404(b) precludes the admission of "other crimes, wrongs or acts" to prove the character or criminal propensity of the defendant, but allows such evidence to be used for the limited purposes of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  This rule does not apply, however, where evidence is directly related to or inextricably intertwined with the crimes charged in the indictment.  *See United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1091 (9th Cir. 2007) ("Rule 404(b) does not exclude evidence forming an essential element of the charged crime."); *United States v. DeGeorge*, 380 F.3d 1203, 1219 (9th Cir. 2004) (holding that evidence that was inextricably intertwined with alleged criminal activity was not subject to strictures of Rule 404(b)); *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (holding that evidence that defendant stole cocaine was directly related to charged drug trafficking conspiracy).  As the Ninth Circuit explained, "[t]he policies underlying Rule 404(b) are inapplicable when offenses

---

[9] The government's previous notice made clear that it did not consider the material disclosed "other acts" evidence subject to Rule 404(b).  (*See, e.g.*, ECF No. 1021-1, Taylor Decl. Ex. A)  It instead informed the defendant's that it would seek "to admit evidence of charged and uncharged crimes, as well as select crimes and arrests that demonstrate proof of the enterprise – including the crimes and arrests described in the incident reports noted above. The government believes that the [disclosed] incidents are direct evidence of the crimes charged and/or are inextricably intertwined to the charged acts (and therefore not Rule 404(b) or Rule 609 evidence)."  (*Id.*)  Accordingly the government indicated that its notice was only being provided in an abundance of caution.  (*Id.*)

committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993); *see also Montgomery*, 384 F.3d at 1062 ("We conclude that each action was 'inextricably intertwined' with the conspiracy, and therefore not subject to Rule 404(b), because each occurred within the temporal scope of the conspiracy and comprised the conspiracy."). This is particularly true in the context of racketeering prosecutions.

For example, in *United States v. Rubio*, 727 F.2d 786, 797-98 (9th Cir. 1983), the Ninth Circuit found no error in the trial court's admission of evidence of the defendant's prior drug conviction as direct evidence, and not as Rule 404(b) material, proving the existence of the racketeering enterprise and association of the defendant in the enterprise. In addition, as the Seventh Circuit explained in *Salerno*, the government must prove the existence of the enterprise, and evidence introduced to establish the existence and nature of the enterprise is not barred by Rule 404(b). 108 F.3d at 739. Likewise, in *DiNome*, the Second Circuit explained that "[p]roof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant. . . ." 954 F.2d at 843. Significantly, the Ninth Circuit quoted *DiNome* in *Fernandez*, when it affirmed the denial of a severance motion in a racketeering case, explaining that the "spillover" evidence about which the defendant complained would have been admissible against him anyway in a separate trial. 388 F.3d at 1243. As such, the separation of the first and second groups of trial defendants is not a proper basis on which to exclude the challenged evidence.

Nor is the evidence barred by Rule 403. Federal Rule of Evidence 403 permits a district court to exclude relevant evidence only if the evidence's probative value is *substantially* outweighed by the danger of *unfair* prejudice (emphasis added). *See, e.g.*, *Decinces*, 808 F.3d at 791 ("Although the admission of the evidence may harm the defendants' case, that is not reason to exclude it under Rule 403, which refers only to *unfair* prejudice.") (emphasis in original). Evidence is unfairly prejudicial if it suggests a decision on an improper basis. *See* Fed. R. Evid. 403 Adv. Comm. Note. There is nothing in the challenged evidence that would suggest a decision on an improper basis. To the contrary, evidence that is probative of an element of the crimes charged is rarely unfairly prejudicial. *See, e.g.*, *United*

*States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (explaining there can be no unfair prejudice from evidence that does not "lure a factfinder into declaring guilt on a ground different from proof specific to the offense charged"). Rule 403 therefore "favors admissibility" in the present case. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). As the Ninth Circuit observed in *Hankey*:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.

*Hankey*, 203 F.3d at 1172 (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983)). As the district court in *Reyes* observed, "[t]he government doesn't have to prove its case through the least prejudicial means. Just because evidence may be highly prejudicial does not compel its exclusion. The evidence has to be unfairly prejudicial." *Reyes*, 2014 WL 4722505, at *17. The same is true here. The challenged evidence goes directly to the elements of the charged offenses, is not unfairly prejudicial, and should be admitted accordingly.

## III.    RESPONSE TO MOTION IN LIMINE NO. 3 (MUGSHOTS)

Defendant Gilton next moves *in limine* to exclude "any and all" mug shots listed in the government's exhibit list. He contends that such evidence is not relevant under Rule 401, and that any probative value provided by the mug shots is substantially outweighed by unfair prejudice under Rule 403. The defendant's motion should be denied.

First, the relevant mug shots of defendant Gilton, his co-defendants, and co-conspirators, are relevant to the offense conduct in this case. Contrary to the defendant's argument, identification issues do exist, and all of the mug shots will be used to identify the defendants, other members and associates of the CDP racketeering enterprise, and victims or rivals of the CDP racketeering enterprise.

Second, the Federal Rules of Evidence strongly favor admitting relevant evidence, and the probative value of the mug shots is not substantially outweighed by unfair prejudice. All of the mug shots that the government intends to introduce into evidence are "head and shoulders" shots that display only the neckline of each individual's shirt. These images show almost no indication that they were taken by law enforcement officials: the images contain no police markings, placards, or identification numbers; they are all set against a neutral background with no height lines or anything else indicating

where they were taken; there are no dates of any nature on the front or back of the photographs; and some of the mug shots show individuals in street clothing. The only indicia that these are photos taken by law enforcement officials is that some of the individuals are wearing orange shirts in their mug shot. But it is doubtful that members of the jury will recognize these photographs as being mug shots. *See Reiger v. Christensen*, 789 F.2d 1425, 1429-31 (9th Cir. 1985) (holding that a trial was not rendered fundamentally unfair where mug shots "did not betray any link with the police or suggest that [the defendant] had a past criminal record."); *see also United States v. Torres-Flores*, 827 F.2d 1031, 1036 (5th Cir. 1987) ("Where all police or prison identification numbers, notations or other indicia have been completely excised, most courts have held that it is permissible to introduce photographs of a defendant.").

Third, the defendants are charged with serious crimes, including murder and attempted murder. It is therefore no secret that the defendants would have been arrested on the charges at issue in this proceeding. To the extent that jurors recognize some of these photographs as mug shots, they will naturally infer that the mug shots were taken when the defendants were arrested for the current offenses. Any potential for unfair prejudice by using these mug shots is low, and does not "substantially outweigh" the high probative value of using this evidence to identify defendants, other members and associates of the criminal enterprise, and the enterprise's victims and rivals. Fed. R. Evid. 403.

Finally, the mug shots will provide the jury with a visual roadmap of the CDP racketeering enterprise. Indeed, mug shots have been used in other large criminal racketeering cases in this District, such as *United States v. Cerna*, 08-CR-0730-WHA (N.D. Cal.) (MS-13 racketeering case), in order to clarify complicated relationships and enterprise structures for the jury while moving through identification issues more quickly. In fact, mug shots were used as an illustrative aid as recently as May 2, 2016, in the *United States v. Cervantes* trial. *See* CR 12-0792 (YGR).

Notwithstanding the above, the government will endeavor to either crop the photographs to attempt to remove the orange sweatshirt from the images or change the sweatshirt color to a more neutral white or black.

## IV. RESPONSE TO MOTION IN LIMINE NO. 4 (NORTHCUTT)

Defendant Barry Gilton further asks the Court to preclude the government from offering

evidence "relating to" Michael Northcutt, an unindicted member of CDP, on the basis that his attorney might have a conflict as a result of his prior representation of Northcutt in a separate case. Unfortunately the defendant has offered the Court no legal support for his request. It should be denied. The basis for such an exclusion is found nowhere in the Federal Rules of Evidence, and the defendant has provided no case law or other support for his request. To the contrary, a potential conflict is not a reason to exclude relevant evidence offered by the government. If counsel believes that he might have a conflict, he should discuss the matter with the defendant and proceed accordingly. The government, however, should not be precluded from offering relevant evidence of the racketeering conspiracy it first charged in 2013 – particularly where, as here, it has no knowledge concerning confidential information that counsel may or may not have obtained during the previous representation.[10] There is simply no legal support for the defendant's request, and his motion should be denied accordingly.

## CONCLUSION

For the foregoing reasons, the defendant's motions *in limine* should be denied as set forth above.


DATED: May 19, 2016                              Respectfully submitted,

                                                 Brian J. Stretch
                                                 United States Attorney


                                                 _____/s/_____
                                                 SCOTT D. JOINER
                                                 DAMALI A. TAYLOR
                                                 WILLIAM FRENTZEN
                                                 Assistant United States Attorneys

---

[10] The defendant claims that the government previously "agreed" that there was no conflict. (ECF No. 975 at 10.) This is incorrect and, more importantly, irrelevant to relevance and admissibility. The government took no position on the existence of a conflict. Nor could it. Defense counsel, rather than the government, is obligated to make such a determination and (on the facts of the present case) is in a far better position to do so. *See* Cal. Rules of Prof. Responsibility R. 3-310 ("A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."). The government has no knowledge of whether defense counsel obtained confidential information material to the current representation. Gilton's defense counsel should not be permitted to use his exclusive knowledge of confidential client information as a sword to exclude relevant prosecution evidence.