BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
SCOTT D. JOINER (CABN 223313)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-6753
    william.frentzen@usdoj.gov
    damali.taylor@usdoj.gov
    scott.joiner@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. CR 13-00764 WHO |
| v. | UNITED STATES' SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTIONS TO SUPPRESS BOOKING STATEMENTS (ECF NOS. 480, 488, 573, 589, 621) |
| ALFONZO WILLIAMS, ET AL. | |
| Defendants. | |

# INTRODUCTION

In light of the Ninth Circuit's decision in *United States v. Williams*, 842 F.3d 1143 (9th Cir. 2016), and pursuant to the Court's Order, the government respectfully submits this supplemental opposition to the defendants' motions to suppress booking statements. (ECF Nos 480, 488, 573, 589, 621.) Rather than repeat previously submitted arguments, the government incorporates those arguments by reference and asks that the Court consider them as if set forth here in full. (*See* ECF Nos. 446, 511.) The government elects not to submit additional argument as to booking statements by Defendants Barry Gilton, Alfonso Williams, Esau Ferdinand, and Paul Robeson.[1] This supplemental opposition instead focuses on certain booking statements made by Defendant Monzell Harding (ECF No. 488).

Monzell Harding's motion to suppress is defective for two primary reasons. First, Harding made two of his statements (October 7, 2009 and August 27, 2013) after receiving *Miranda* warnings and knowingly and intelligently waiving his rights. There is no basis for the suppression of such statements. Second, each of Harding's statements on August 27, 2013, and August 23, 2009, followed arrests for non-violent offenses with no inherent connection to criminal street gangs (taking a vehicle without the owner's consent, driving without a license, and residential burglary). Unlike the pending murder charges at issue in *Williams*, questions about gang affiliation in this context were not reasonably likely to produce an incriminating response. Harding's motion should be denied accordingly.

## STATEMENT OF RELEVANT FACTS

### A.     Harding's October 7, 2009 Booking Statements

On October 6, 2009, San Francisco Police Department (SFPD) officers arrested Harding after he and other members of CDP attempted to intimidate a key prosecution witness during a preliminary hearing in the murder trial of co-defendant Charles Heard. (ECF No. 1100, Def. Exhs. A, B.)[2] Harding

---

[1] The government does not currently intend to offer booking statements from these defendants in its case-in-chief, but reserves the right to do so if the defendants open the door to such evidence. *See James v. Illinois*, 493 U.S. 307, 311-312 (1990) (Supreme Court "has carved out exceptions to the exclusionary rule ... where the introduction of reliable and probative evidence would significantly further the truthseeking function of a criminal trial and the likelihood that admissibility of such evidence would encourage police misconduct is but a 'speculative possibility."); *see also United States v. Rosales-Aguilar*, No. 14-50315, 2016 WL 1425877, at *4 (9th Cir. Apr. 12, 2016) (Defendant's voluntary but non-Miranda-compliant statements admissible to impeach psychiatrist's hearsay testimony supporting defendant's contention he lacked specific intent).

[2] These exhibits were previously submitted by defendant Harding in connection with his motion to

was Mirandized and interviewed by the police at approximately 6:10 PM. (*Id.*) Harding moved to suppress these statements on the ground that the *Miranda* warnings were defective and that the officers had engaged in an impermissible two-step interrogation. (ECF No. 1100.) The Court denied the motion, instead finding that "Harding's responses, such as they were, were voluntary and the *Miranda* warning was effective: Harding often remained silent in response to questions, denied knowing the circumstances surrounding his arrest, and admitted to being at the courthouse." (ECF No. 1097.) After his *Miranda* waiver and interview, Harding was booked into county jail. The following day, on October 7, 2009, he was questioned by a deputy at the jail. In response to a question about his gang affiliation, Harding responded "Uptown Fillmore." (Joiner Decl., Ex. A.)[3]

B.  **Harding's August 27, 2013 Booking Statement**

On August 27, 2013, at approximately 3:04 p.m., SFPD officers arrested Harding for burglary and receiving stolen property. He was later convicted of receiving stolen property. (ECF No. 488 at 7; Def. Ex. J (SFPD Incident Report No. 130713080).) After his arrest, SFPD Inspector Nannery provided *Miranda* warnings to Harding and interviewed him at Park Station.[4] (Joiner Decl. Ex. B.) Harding waived *Miranda* and denied any wrongdoing in response to the inspector's questions. (*Id.*) At approximately 7:23 PM the same day, Harding was interviewed by a sheriff's deputy at county jail. When the deputy asked Harding if he was still with "OCP?" Harding responded, "Hell no. I'm central divis . . . not OCP." (*Id.*).

C.  **Harding's August 23, 2009 Booking Statement**

On August 22, 2009, SFPD officers arrested Harding and booked him into San Francisco County Jail for violating California Vehicle Code 10851(a) (taking vehicle without owner's consent) and 12500(a) (driving without a license). On August 23, 2009, when the sheriff's deputy at the jail asked

---

suppress his statements. The Court denied the motion and ordered Harding to file his motion in the public record. Because the Court has already ruled that the statements were proper under *Miranda*, the government is not resubmitting the underlying exhibits.

[3]   In its case in chief, the government will not seek to introduce Harding's bookings statements following his August 8, 2011 arrest or his November 9, 2011 arrest. As noted above, the government reserves the right to introduce these statements if the defendant opens the door at trial.

[4]   The inspector's chronological of investigation indicates that Harding was Mirandized and waived. (Joiner Decl., Ex. B.) The government is in the process of obtaining the recorded interview, if it exists.

Harding about gang membership, Harding responded, "I am from Divis. I hook up with 800 block and Chopper City." (ECF No. 488, Def. Ex. C.) No charges were filed.

## POINTS AND AUTHORITIES

### A. Harding Received *Miranda* Warnings and Waived His Rights Before Making Statements About His Gang Affiliation on October 7, 2009 and August 27, 2013.

Harding's motion provides no legal or factual basis for suppression. As an initial matter, he waived his *Miranda* rights before providing statements to sheriff's deputies on October 7, 2009, and August 27, 2013. It matters little to the analysis that Harding received *Miranda* warnings hours or even a full day before deputies asked about his gang affiliation. The Supreme Court and the Ninth Circuit have long held that once a defendant knowingly and intelligently waives his *Miranda* rights, police officers do not need to repeat *Miranda* warnings before every interview. *Wyrick v. Fields*, 459 U.S. 42 (1982) (rights need not be repeated after a break in questioning, as long as the waiver is otherwise valid); *United States v. Andaverde*, 64 F.3d 1305 (9th Cir. 1995) (same). As the Ninth Circuit noted in *Andaverde*, "courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." *United States v. Andaverde*, 64 F.3d 1305, 1312 (9th Cir. 1995). Courts in the Ninth Circuit and across the country regularly find that waivers continue to be valid despite the lapse of a significant amount of time between interrogations – even where different officers conduct subsequent interviews. *See, e.g.*, *Roberts v. Cohen*, 117 F. App'x 504, 505 (9th Cir. 2004) (twenty-two hour lapse between receipt of warnings from prior officer and next-day questioning by a different officer) (collecting cases); *Guam v. Dela Pena,* 72 F.3d 767, 769-70 (9th Cir.1995) (fifteen hours); *Andaverde,* 64 F.3d at 1313 (9th Cir.1995) (one day); *Puplampu v. United States,* 422 F.2d 870, 870 (9th Cir.1970) (per curiam) (two days); *Maguire v. United States,* 396 F.2d 327, 331 (9th Cir.1968) (three days).

The time elapsed in the present case is well within the timeframes upheld by the Ninth Circuit on similar facts. On October 6, 2009, SFPD officers interviewed Harding at around 6:00 PM before booking him into county jail. Harding knowingly and intelligently waived his *Miranda* rights during that interview. (Minute Order, ECF No. 1097.) When Harding provided booking statements the

following day, on October 7, 2009, no more than one day had elapsed between his *Miranda* waiver and his booking statement.[5]  As the Ninth Circuit found in *Dela Pena*:

> The determining factor is the lapse of time between 7:50 p.m. the evening of February 22 when Dela Pena was given adequate *Miranda* warnings, and 10:35 a.m. the next day when his questioning resumed. The issue is whether this lapse of time rendered the earlier *Miranda* warnings ineffective with regard to Dela Pena's confession which he made during the resumed questioning. We conclude this lapse of time did not require new *Miranda* warnings.

*Dela Pena*, 72 F.3d at 769.  *See also Andaverde*, 64 F.3d at 1313 ("one day interval between the *Miranda* warning and waiver, and Andaverde's October 28 statement to Keeth was not unreasonable").

The same is true of the August 27, 2013, booking statement.  In that instance, SFPD provided *Miranda* warnings and interviewed Harding sometime after 3:00 PM in the afternoon.  Just as he did in October 2009, Harding waived his rights and spoke with the officers.  He provided his booking statement about gang affiliation at approximately 7:23 PM.   There can be little doubt that his waiver remained valid between 3:00 PM and 7:30 PM on the same day.

### B. Arrests for Vehicle Code Violations and Residential Burglary Do Not Transform Routine Booking Questions Into Interrogation Under the Fifth Amendment.

Harding's statements about gang affiliation on August 27, 2013 and August 23, 2009 are also separately admissible under the traditional "booking questions" exception to the Fifth Amendment.  In both situations, the deputies' questions about gang affiliation were not likely to produce an incriminating response from Harding and there can be no basis for suppression under the Fifth Amendment.

In *Williams*, the Ninth Circuit explained that the "booking questions" exception "exempts 'from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services.'"  842 F.3d at 1147 (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990)).  Because such questions "rarely elicit an incriminating response, routine gathering of biographical data does not constitute interrogation sufficient to trigger constitutional protections." *Id.* (citing *United States v.*

---

[5] The booking statement form does not indicate when the statement was received, but in all likelihood, it happened within hours of the waiver.  Considering that Harding was interviewed in the evening, he likely met with the classification deputy the following morning.   This means that the time between his waiver and the classification interviews was probably in the 12-15 hour range rather than 22-24 hour range.  But regardless of whether 12-15 hours passed (or something closer to twenty-four hours) both time periods are well within the bounds approved by the Ninth Circuit.

*Gonzalez–Sandoval*, 894 F.2d 1043, 1046 (9th Cir. 1990)). "[T]he term 'interrogation' under *Miranda* refers ... to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). But as the Ninth Circuit explained in *Williams*, whether a question falls within the "booking questions" exception depends heavily on the context:

> Under the circumstances, are questions about gang affiliation reasonably likely to produce an incriminating response? In a case involving Medicare fraud, they are not. But when murder is the charge, the questions—even if asked for administrative purposes—are reasonably likely to elicit incriminating information.

*Williams*, 842 F.3d at 1147, 1148–49. The *Williams* Court believed that the deputy questioning Gilton should have known that questions about Gilton's gang affiliation, in the context of a murder investigation, were likely to produce incriminating responses. As the panel reasoned, "[t]he risk that information about gang affiliation will prove incriminating is even greater when a defendant is charged in California with murder, a crime that the state's Supreme Court has acknowledged is 'frequently committed for the benefit of criminal street gangs.'" *Id.* at 1148 (quoting *People v. Elizald,*, 61 Cal.4th 523 (2013)).

The same is not true of the charges pending against Defendant Harding on August 23, 2009 and August 27, 2013. Unlike Antonio Gilton, Harding had been arrested for vehicle code violations (taking a vehicle without the owner's consent and driving without a license in August 2009) and residential burglary (August 2013). None of these charges are inherently gang-related. To the contrary, the deputies had no reason to believe that booking questions about gang affiliation would tend to incriminate Harding in the context of such arrests.

The distinction between the underlying criminal offenses for which the defendant was arrested is important. As the Ninth Circuit cautioned in limiting its holding in *Williams*:

> [I]t is also important to note what we do not hold. We do not hold that prison officials may not inquire into a prisoner's gang membership in the interests of inmate safety… Nor do we hold that the responses to such questions cannot be used for purposes of inmate housing. Rather, we hold **only that when a defendant charged with murder invokes his *Miranda* rights**, the government may not in its case-in-chief admit evidence of the prisoner's unadmonished responses to questions about his gang affiliation.

U.S. SUPP. OPP. RE BOOKING STATEMENTS
CR 13-00764 WHO                                       5

842 F.3d at 1150 (emphasis added) (citations omitted). In limiting its holding, the Court did not disturb earlier precedent that applied the booking questions exception to gang affiliation where the pending charges had nothing to with violent crimes committed by gang members. Such is the case with Harding's statements on August 23, 2009 and August 27, 2013. Stealing a car, driving without a license, and residential burglary are not the equivalent of murder. Harding's answers should therefore be admitted under the traditional booking questions exception to the Fifth Amendment. *See United States v. Washington*, 462 F.3d 1124, 1133 (9th Cir. 2006) (routine booking questions about a defendant's gang moniker fall outside of *Miranda*'s scope given safety concerns); *United States v. Salgado*, 292 F.3d 1169, 1173-75 (9th Cir. 2002) (booking questions about place of birth and country of citizenship routine, where charges did not relate to defendant's immigration status and questions were "solely for the administrative purpose of determining whether Salgado was deportable when he got out of jail").

## CONCLUSION

For the foregoing reasons, and those previously submitted (ECF Nos. 446, 511), the government respectfully requests that the Court deny the defendants' motions to suppress their booking statements.

DATED: April 28, 2017

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

_____/s/_____
SCOTT D. JOINER
WILLIAM FRENTZEN
Assistant United States Attorneys