UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>ALFONZO WILLIAMS, et al.<br>　　　　　Defendants. | Case No. 3:13-cr-00764-WHO-1<br><br>**ORDER DENYING FERDINAND'S SECOND MOTION TO SUPPRESS CELL PHONE DATA**<br><br>Re: Dkt. No. 1265 |

## BACKGROUND

Ferdinand raises a second motion to suppress telephone data obtained following the seizure of his cell phone on October 25, 2011. ("Second Mot.")(Dkt. No. 1265). He argues that the phone was illegally searched incident to arrest before officers obtained a warrant to search the phone's contents. I deferred ruling on Ferdinand's original motion, Dkt. Nos. 482-483, until the government provided additional discovery from San Francisco Police Department ("SFPD") regarding the seizure of Ferdinand's phone and any search of the phone. The government has since provided Ferdinand with the SFPD report, *see* Waggener Decl. ¶ 3 (Dkt. No. 1266), and relevant reports from the San Pablo Police Department ("SPPD"), *see* Joiner Decl. ¶¶ 2, 4, 5 (Dkt. No. 1326-1)(Exs. A, C, D [filed under seal]).

At approximately 1:30 p.m. on October 25, 2011, SFPD officers arrested Ferdinand pursuant to outstanding arrest warrants. Waggener Decl. ¶ 3 (citing 2-page report from SFPD Inspector Whitfield, who was not present at the scene of the arrest). At the time of his arrest, SPPD officers were meeting with SFPD Gang Task Force ("GTF") officers about the October 18, 2011 murder of KOP member Donte Levexier. Labanowski Decl. ¶¶ 5–7; Brady Decl. ¶¶ 5–7 (Dkt. Nos. 1326-2, 1326-3). The Levexier murder occurred in San Pablo, and GTF officers

suspected that members of CDP were responsible, based in part on the ongoing feud between the gangs. Labanowski Decl. ¶5; Brady Decl. ¶ 5. The meeting was held in the same location where Ferdinand was processed by SFPD following his arrest. Labanowski Decl. ¶¶ 5–7. After learning of Ferdinand's arrest, Sergeant Labanowski walked downstairs, retrieved Ferdinand's phone from his personal property, brought it back upstairs, and performed an extraction using a machine in the office. Labanowski Decl. ¶ 7. According to Sergeant Labanowski, this was standard procedure at the time for searching a cellular phone incident to arrest. *Id*. Sergeant Labanowski and SPPD Officer Brady reviewed the contents of the 140-page report,[1] and relayed information to SPPD Detective David Neece, so that he could prepare a search warrant for the phone. Brady Decl. ¶ 7.

The next day, SPPD Detective Neece applied for a search warrant to search the contents of the phone. In his affidavit, he noted that Ferdinand was arrested the previous day, and

> At the request of SPPD, Sgt. Gancasz collected Ferdinand's phone for evidence related to this crime[.] … During a search incident to arrest, a preliminary search of the phone was conducted and it was found that Ferdinand's phone number is 831-775-9794. Under his contacts, Gordon's phone number was confirmed, and Carmichael's phone number was found under "Vito" as 510-213-1451. In addition it was found that Ferdinand's phone was possibly turned off during the time of the [Donte Levexier] homicide [on October 18], however a text message was received on his phone at approximately 1650 hours on 10/19/11 from "Robin" read "LOAD THESE 7.62 UP .. YOU NOE." Robin's phone number is 510-776-4344. I believe this means that the person texting was loading a 7.62 rifle with a magazine. 7.62 is the same rifle round that was used to kill Donte.

Waggener Decl. ¶ 6.

**DISCUSSION**

The determination of Ferdinand's motion depends on what the controlling law was at the time of the search. Today, warrantless searches of cellphone data are unreasonable under the Fourth Amendment as a result of the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014). The Court held that the search incident to arrest exception did not apply to searches

---

[1] The report, which was produced to defendants during discovery, contains information as to 139 contacts, over 600 phone SMS-text messages, over 275 images, and incoming and outgoing call information located on the phone. The report, dated Tuesday, October 25, 2011 4:08 p.m., indicates the "Extraction start date/time" as October 25, 2011 at 15:56:17.

2

of cellphone data, but other exceptions, such as "the exigencies of the situation" may "make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id*. at 2494.

But the search Ferdinand complains of occurred in October 2011. The government argues that the search was lawful under the California Supreme Court's decision in *People v. Diaz*, 51 Cal. 4th 84 (Cal. 2011), which was published in January 2011. U.S. Opp'n at 2. It is correct.

I previously granted a motion to suppress data downloaded from a 2010 warrantless search of defendant Harding's cellphone, even though the search was conducted prior to the Supreme Court decision in *Riley*. Order Granting Harding's Mot. to Suppress Cell Phone Data (Dkt. No. 632). The government proffered the same argument that *Diaz* upheld the warrantless search of a cell phone following an arrest. I rejected that argument because of a Ninth Circuit case that reversed the denial of a motion to suppress, *United States v. Camou*, 773 F.3d 932 (9th Cir. 2014), with "undeniable similarities," even though it was a post-*Riley* case. Dkt. No. 632. The defendant in *Camou* was arrested in California in August 2009, before both *Riley* and *Diaz*. The Ninth Circuit agreed with Camou that the warrantless search of his cellphone was unconstitutional because it occurred an hour and twenty minutes after arrest—not "roughly contemporaneous" with his arrest—and no other exception to the warrant requirement applied. *Id*. at 937.

However, after I granted Harding's motion to suppress, I denied a similar motion brought by defendant Williams. Dkt. No. 891. In that order, I stated, "[t]he critical question in Harding's case, and in this one, is whether there was any governing law authorizing a warrantless search of cell phones at the time of the search, because the evidence obtained during a search conducted in reasonable reliance on such precedent is not subject to the exclusionary rule." Dkt. No. 891 at 1–2 (citing *Davis v. United States*, 131 S. Ct. 2419 (2011)). I noted that "[t]he good faith exception did not apply to Harding's 2010 search because of the lack of binding state or federal authority authorizing it." *Id*. at 2. I concluded that the 2012 search of Williams's phone was different, due to the intervening decision from the California Supreme Court in *Diaz*. *Id*.

The same holds true here. *Diaz* was published in January 2011, and Ferdinand's phone

was searched incident to his arrest in October 2011.[2] The officers therefore acted with objectively reasonable reliance on the governing law at the time. The good faith exception applies and Ferdinand's motion to suppress the contents of his phone searched following his arrest in 2011 is DENIED. *See Davis*, 564 U.S. at 241 ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.").

**IT IS SO ORDERED.**

Dated: October 11, 2017

William H. Orrick
United States District Judge

---

[2] Ferdinand's counsel argued at the hearing that the government had not provided sufficient information surrounding the specifics of Ferdinand's arrest and the seizure of his cell phone. The government disputed that contention, but it would seem to make no difference because there is no dispute that the warrants existed, Ferdinand was arrested pursuant to them, and the search of his cell phone was conducted incident to that arrest. The good faith exception would still apply.

4